IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TONYA FREEMAN                                                    PLAINTIFF

         v.                          Civil No. 12-2129

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                  DEFENDANT

### MEMORANDUM OPINION

        Plaintiff, Tonya Freeman, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim

for a period of disability, disability insurance benefits ("DIB"), and supplemental security income

("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).   In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C.

§ 405(g).

### I.      Procedural Background:

        Plaintiff filed her original applications for DIB and SSI on December 8, 2005, alleging a

disability onset date of September 30, 2004, due to bilateral heel spurs, tailbone fracture, scoliosis, chest

pain, coronary artery disease, high blood pressure, diabetes, migraines, tumors, and depression. Tr. 14,

60-61, 62-63, 80-81, 84-90, 91-97, 184, 335, 358-359, 378-379, 398-399, 899-900, 903, 957-958.  Her

applications were initially denied and that denial was upheld upon reconsideration. Tr. 33, 37, 42.  An

administrative hearing was held on November 2, 2007, and an unfavorable decision was rendered on

November 30, 2007. Tr. 14, 1046-1064.   On June 30, 2011, this Court remanded the case for further

development of the record concerning Plaintiff's RFC. Tr. 309-328.

_____

        [1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1)
of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the
defendant in this suit.

On September 2, 2009, Plaintiff filed subsequent applications for DIB and SSI, alleging disability beginning on December 1, 2007.  An administrative hearing on these applications was held on August 10, 2010, and benefits were denied by a decision dated November 19, 2010.  Tr. 769-778, 1026-1064.  Plaintiff requested Appeals Council ("AC") review, and on October 18, 2011, the matter was remanded for further consideration.  The AC further directed that the 2005 and 2009 applications be consolidated.  Tr. 808-810.

A supplemental hearing was held on March 20, 2012.  Tr. 996-1025.  Plaintiff was present and represented by counsel.  At that time, Plaintiff was 45 years old and possessed an eighth grade education.  Tr. 22, 67.  She had past relevant work ("PRW") experience as a cafe/restaurant worker.  Tr. 63, 336, 343-349, 360-367, 904, 911-925.

On April 5, 2012, the ALJ found that Plaintiff's diabetes mellitus, obesity, bilateral retrocalcaneal spurring with Achilles tendon insertion point spurring, depressive disorder, and anxiety disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 281-283.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except the claimant can only understand, remember, and carry out simple, routine, and repetitive tasks; can respond to usual work situations and ordinary work changes; can occasionally interact with supervisors, co-workers, and the general public; can lift 10 pounds occasionally and less than 10 frequently; can sit for 6 hours in a day; stand/walk for 2 hours in a day; and, occasionally climb, balance, stoop, kneel, crouch, and crawl.  Tr. 283-294.  With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as an assembler, clerical worker, and inspector/checker/sorter.  Tr. 295.

2

Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 14.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.   __Applicable Law__:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

3

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion:**

Plaintiff contends that the ALJ erred in determining that Plaintiff's subjective complaints were not entirely credible; failing to develop the record with regard to physician's assistant James Saunders' medical source statement; and, concluding she could perform a range of sedentary work.

**A.      Subjective Complaints:**

In her first point of error, Plaintiff asserts that the ALJ erred in his credibility analysis. The ALJ was required to consider all the evidence concerning Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of her pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of her medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's]

4

credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ based his credibility determination upon Plaintiff's reports of her daily activities, the fact that her treatment seeking behavior was not consistent with the disabilities she alleged, and her treatment noncompliance as it related to her diabetes and obesity.

### 1.    Activities of Daily Living:

Records indicate that Plaintiff lived with her mother, her grown daughter, and her three grandchildren (ages 6, 2, and 2 months).  Tr. 575-579.  In March 2005, Plaintiff indicated that her activities of daily living included taking care of her mother and granddaughter (to include diaper changing and feeding), caring for her personal hygiene, preparing simple meals, helping straighten up the house, doing her own laundry, and going outside.  Tr. 52-59.  Plaintiff also reported the ability to ride in a car, shop in stores for food and clothing once every two weeks, pay bills, count change, handle a savings account, use a checkbook/money orders, watch television, and read.  In September 2009, Plaintiff again reported preparing breakfast for herself, her mother, and her grandchildren; straightening up her room, doing the dishes, doing the laundry, and ironing.  Tr. 350-357, 927-934.  While we recognize that Plaintiff's testified to a more limited range of daily activities, the medical evidence does not indicate a deterioration in her  medical condition.  *See Buckner v. Astrue*, 646 F.3d 549, 558-559 (8th Cir. 2011) (in discounting credibility, ALJ properly considered evidence that Plaintiff could care for his son and ill girlfriend, do house cleaning, do yard work, leave his residence every day, ride in a car, go out alone, go shopping in stores, manage his finances, use a computer, play sports occasionally, socialize and play games with friends or family, and attend religious services).

### 2.    Treatment History:

Plaintiff's treatment history also fails to support her allegations of disability.  She has alleged disability due to bilateral heel spurs, tail bone fracture,  scoliosis, chest pain, coronary artery disease,

AO72A
(Rev. 8/82)

high blood pressure, diabetes, migraines, tumors, and depression.  We note, as did the ALJ, that the medical evidence fails to establish the existence of coronary artery disease, tail bone fracture, or migraines.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  Although Plaintiff experienced chest pain on several occasions, her treatment was inconsistent.  *See Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).  It appears that she was first treated for chest pain in 2007, however, in December she reported no chest pain in the last month.  Tr. 618-619.  In July 2008, Plaintiff indicated that she had experienced chest pain the previous night, but it had responded to Nitroglycerine.  Tr. 612-614.  *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  In February 2009, Plaintiff reported no chest pain and no further treatment was sought until June 2009.  Tr. 607-609, 610-612.  At that time, she indicated that her chest pain remained responsive to Nitroglycerine.  *See id*.  In August 2009, Plaintiff was hospitalized for four days due to unstable angina.  Tr. 450-495.  However, a heart catheterization was normal, and a stress test revealed an ejection fraction rate of 65 percent.  Tr. 450-495.  In October 2009, she reported experiencing chest pain at least twice per week, but it appears to have been responsive to Nitroglycerine.  Tr. 569-573.  *See id*.  And, an electrocardiogram in November 2011 was normal.  Tr. 732.

The record also reveals that Plaintiff suffered from hypertension, for which she was prescribed medication.  Tr. 151-152, 154-155, 612-614, 636-637, 639-640, 729, 765.  However, it appears that her blood pressure responded to medication.  *See id*.  Likewise, Plaintiff was treated for a benign tumor on her back and abdomen, but it did not significantly interfere with her ability to perform basic work activities.

6

Further, the evidence is limited regarding her back impairments.  An x-ray of her lumbar spine performed in November 2005 showed mild levoscoliosis, while x-rays from January 2005 were completely normal.  Tr. 130-140, 161-164.  *See Forte*, 377 F.3d at 895.  Plaintiff was treated for arthralgias in July 2008, but treatment notes indicate that her pain responded well to conservative treatment via Meloxicam.  Tr. 612-614.  *See Patrick* , 323 F.3d at 596.  In June 2009, she reported neck pain after being involved in an automobile accident.  However, she sought no further treatment for her pain.

Plaintiff did have a history of treatment for bilateral heel spurs resulting in foot pain dating back to at least 1993.  Tr. 125, 110, 113.  X-rays of her ankles in July 2005 showed prominent spurs arising from the plantar aspect of the calcifications at the talonavicular joint.  Tr. 170-174.  Records indicate that she was treated via corticosteroid injections into the bottom of her feet that resolved some of her pain, but she continued to experience pain on the back of her heels with noted edema.  An examination in October 2005 revealed significant equinus deformity of both feet at the ankle with tightness of the achilles tendon complex.  Tr. 235-236, 629A-629B.  The doctor indicated that he wanted to avoid surgery, so he placed Plaintiff on anti-inflammatory medications, prescribed appropriate shoe wear, and instructed her to perform a significant stretching program.  In March 2006, she was noted to have a bulging area close to the right achilles tendon.  Tr. 209, 212, 631-632.  However, she was diagnosed with foot pain secondary to morbid obesity.  At this time, the doctor advised her there was nothing more he could do for her.  In November 2007, an x-ray of her left foot revealed degenerative changes.  Tr. 501. And, in August 2007, she was noted to have a 10 year history of treatment for foot pain and some tingling.  Tr. 251-253.  No further treatment notes are contained in the record. *See Edwards*, 314 F.3d at 967.  And, there are no records to indicate Plaintiff suffered from a lasting gait disturbance or a significantly decreased range of motion in her feet.

7

Beginning in April 2007, Plaintiff was diagnosed with diabetes mellitus type II.  She was placed on a 1200 calorie diet, advised to lose weight, and prescribed Metformin.  In May she was treated for symptoms associated with hyperglycemia and a headache, at which time her blood glucose was 274.  Tr. 438-443.  However, it appears she did not take her medication as prescribed and returned for treatment in July, stating that she needed to get "back on" her medications.  Tr. 253-254.  At this time, her fasting blood sugar was 163.  In August, Plaintiff's records indicate that she was prescribed Glucophage and had an average blood sugar level of less than 160.  Tr. 251-253.  Her fasting blood glucose level in December was 151, and she reported that her highest reading over the previous month had been 175.  Tr. 618-619.  However, by June 2009, her blood sugars levels had come down, with her highest being 132.  Tr. 610-612.  Two months later her HgA1c (average blood sugar level over the previous three months) was 6.5, which was  elevated, so Plaintiff was again prescribed a strict diet.  Tr. 450-452.  She was treated in October 2009 and given medication refills.  Tr. 569-573, 605-607.  No further treatment was sought out until May and August 2011.  Tr. 729, 765.  However, Plaintiff continued to be prescribed oral medication, a strict diet, and weight loss.  And, her symptoms did not necessitate the use of insulin or hospitalization, and we can discern no treatment for symptoms associated with extreme hyper or hypoglycemia.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

Plaintiff was also diagnosed with depression for which she was prescribed Fluoxetine.  She did not, however, seek out professional mental health treatment.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration).  On August 9, 2006, she was evaluated by Dr. Patricia J. Walz.  Tr. 175-179.  Plaintiff admitted suffering from depression in the past, but indicated that she had not had any psychiatric treatment or taken any psychotropic medication.  She also reported recent suicidal ideations, but denied any suicide attempts.  Dr. Walz diagnosed her with dysthymia versus major depression,

8

recurrent moderate without psychosis.  She noted that Plaintiff had very few friends, and estimated her intellectual abilities to fall within the borderline range.

On June 14, 2007, Dr. Robert L. Spray, Jr. evaluated Plaintiff.  Tr. 217-223.  Testing revealed a full scale IQ of 80 (low average) and low average scores in reading and spelling with borderline scores in math.  Dr. Spray diagnosed Plaintiff with major depression and assessed her with a global assessment of functioning ("GAF") score of 60-70.  He noted that she struggled with abstract verbal reasoning and her attention span was good, but her  long reaction times and slow pace could impair her ability to perform work-like tasks.  Dr. Spray also indicated that Plaintiff's chronic depression had the ability to result in episodic difficulty in concentration.  He felt she would probably find it difficult to work in a job setting where she was required to complete tasks in a timely manner.

On January 26, 2010, Dr. Terry Efird completed a mental diagnostic evaluation.  Tr. 575-579. Plaintiff reported taking Fluoxetine, which resulted in vivid dreams.  Although medical records indicated that the medication was effective, she stated that it was not noticeably beneficial.  Dr. Efird diagnosed her with major depressive disorder and anxiety disorder not otherwise specified and assessed her with a GAF score of 46-59.  He indicated that her GAF score was low,  due to her reported suicidal ideations. Dr. Efird noted that Plaintiff communicated and interacted in a reasonably socially adequate manner, communicated in a reasonably intelligible and effective manner, had the capacity to perform basic cognitive tasks required for basic work like activities, showed no indications of cognitive inefficiency, appeared able to track and respond adequately for purposes of the evaluation, had attention/concentration abilities that were fairly consistent with her estimated IQ, generally completed most tasks during the evaluation, had no remarkable problems with persistence during the evaluation, completed most tasks within an adequate time frame, and exhibited a mental pace of performance that was fairly consistent with her estimated I. Q.

3.      **Noncompliance**:

Plaintiff's credibility is also overshadowed by her treatment noncompliance, specifically with regard to her diabetes and obesity.  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain).  In July 2007, shortly after being diagnosed with diabetes mellitus type II, Plaintiff indicated that she needed to get back on her diabetic medication.  Tr. 253-254.  In July 2008, she reported being out of medication for approximately one week.  Tr. 612-614.  And, in February 2009, Plaintiff stated that she had been out of medication for one month.  Tr. 610-612.  Then, in May 2011, Plaintiff returned for treatment reporting she had been out of medication since November 2009, with her last medical appointment having been in October 2009.  Tr. 729.

Plaintiff contends that her noncompliance was justified because she had no insurance or money for treatment.  To bolster her contention, Plaintiff cites to treatment notes documenting that her lack of insurance or money for treatment left her with few treatment options with regard to her foot pain, as physical therapy and an orthopedic consultation would not be available to her.  Tr. 110, 113, 125.  She also points out a notation that Dr. Baker had released her from care because she could not pay for his services, and that her care with Dr. Vanderburg was being funded through a grant.  Tr. 155.  However, evidence of her noncompliance continued well after the 2005 notation that she had received the grant.  Accordingly, we find Plaintiff's argument to be without merit.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons).

B.      **Duty to Develop the Record**:

In her second point of error, Plaintiff posits that the ALJ failed to fully and fairly develop the record.  The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir.

10

2004).  In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision.  *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).  The ALJ is only required to develop a reasonably complete record.  *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

Plaintiff asserts that the ALJ failed in his duty because he did not recontact James Saunders, the Physician's Assistant working for Plaintiff's doctor, regarding his medical source statement. Specifically, Mr. Saunders indicated that Plaintiff would need a job with a sit/stand/walk at will option. He underlined the word sit, and then wrote that he did not think Plaintiff could be on her feet for 8 hours per day.  Plaintiff contends that she is unable to sit for 8 hours per day.  And, although it is not clear from the ALJ's opinion whether he interpreted this to mean Plaintiff could sit for 8 hours per day, Plaintiff believes he should have recontacted Mr. Saunders for clarification of this issue.  We disagree.  It is evident that Plaintiff's bilateral heel spurs would make extensive walking and standing difficult, but there is no evidence, aside from Plaintiff's testimony, to indicate that her ability to sit was limited by her impairments.  As such, clarification of Mr. Saunders' assessment was not necessary.

Additionally, Plaintiff contends that the ALJ should have sent Plaintiff out for further evaluation of her mental impairments or contacted Dr. Spray or Dr. Walz for clarification of their opinions.  After reviewing the evidence, however, we find no ambiguity in their assessments.  And, although Dr. Walx did assess Plaintiff with low average intelligence and indicated that her prognosis without treatment was poor and guarded to fair with treatment, we note that Plaintiff failed to seek out mental health treatment on her own.  She was prescribed Fluoxetine to treat her depression, which Mr. Saunders noted was situational and related to recent deaths in the family.  Further, Plaintiff was able to work prior to her alleged onset date, in spite of her low average IQ.  *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (in the absence of any evidence of a change in a claimant's intellectual functioning, a person's IQ is presumed to remain stable over time).

11

## C.    RFC:

Lastly, Plaintiff contends that the ALJ erred in concluding that she could perform a range of sedentary work.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id.*

On August 21, 2006, Dr. Jerry Henderson completed a mental RFC assessment and psychiatric review technique form.  Tr. 186-204.  After reviewing her medical records, he assessed her with moderate limitations in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based

12

symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in work place; and, set realistic goals or make plans independently of others.

On July 5, 2007. Dr. Robert Spray, Jr., completed a mental RFC assessment. Tr. 224-226. He concluded that she would have marked limitations with regard to pace, due to her slow/long rest time and moderate limitations interacting appropriately with supervisors and co-workers, and responding appropriately to usual work situations and changes in a routine work setting.

On October 6, 2009, Dr. Jerry Thomas, a non-examining consultative examiner, completed an RFC assessment. Tr. 559-566.   After reviewing her medical records, he concluded that she could lift and carry 10 occasionally, less than 10 frequently, stand/walk at least 2 hours per 8 hour day, and sit for 6 hours per 8 hour day.  This assessment was affirmed by Dr. Ronald Crow on February 4, 2010.  Tr. 602.

On August 16, 2011, Mr. Saunders completed a Medical Source Statement.  Tr. 765.  He indicated that he had been treating Plaintiff for morbid obesity  (BMI 52), diabetes, hypertension, and depression since 2007. He was of the opinion that she would sometimes need to take unscheduled breaks during an 8 hour working shift due to her obesity if the job was physically demanding, would need a sit/stand/walk option at will, and would miss one day of work per month due to her impairments.  Mr. Saunders also commented that Plaintiff was currently depressed due to some recent deaths in family, but he did not believe it to be a permanent thing.

After reviewing these assessments, Plaintiff's medical records, and her testimony concerning her daily activities, we believe substantial evidence supports the ALJ's determination that Plaintiff could perform a range of sedentary work.  The overall evidence simply does not support Mr. Saunders' statement that Plaintiff would miss one day of work per month, or that she would need a sit/stand/walk option. *See Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir. 2004) (While the opinion of a treating

13

physician is entitled to substantial weight, it is not conclusive because the record must be evaluated as a whole.).

**V.      Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 12th day of June 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

14